Scott A. Lucas (SL-6316)
Steven M. Sack (SS-4479)
Law Offices of Scott A. Lucas
The Lincoln Building – Suite 1001
60 East 42nd Street
New York, NY 10165
(212) 573-6906

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

PRINCE BRELAND, ANNIE COLEMAN and    08cv6120 (LAK) (DEF)
MAXIME DIATTA, individually and on behalf
of all others similarly situated,    COMPLAINT
   COLLECTIVE AND
        *Plaintiffs*,    CLASS ACTION

     -against-

GEOFFREY ZAKARIAN, COUNTRY IN NEW
YORK, LLC, ADAM BLOCK, 3SIXTY
HOSPITALITY, LLC, MOSHA LAX,
THE CARLTON HOTEL ON MADISON
AVENUE and CARLTON HOTEL
MANAGEMENT, LLC,

        *Defendants*.
----------------------------------------------------------X

     Plaintiffs PRINCE BRELAND, ANNIE COLEMAN and

MAXIME DIATTA, individually, and on behalf of all others similarly

situated, sometimes collectively referred to herein as "Plaintiffs," by their

attorneys, the Law Offices of Scott A. Lucas, allege as follows for their

Complaint against Defendants GEOFFREY ZAKARIAN, COUNTRY IN

NEW YORK, LLC, ADAM BLOCK, 3SIXTY HOSPITALITY, LLC,

MOSHA LAX, THE CARLTON HOTEL ON MADISON AVENUE and CARLTON HOTEL MANAGEMENT, LLC, who, by virtue of the common enterprise and joint employment relationships alleged herein, are sometimes collectively referred to herein as "Defendants".

## **INTRODUCTION**

1.      This is a wage and hour action by current and former "prep" and line cooks on behalf of themselves and a class of similarly situated "prep" and line cooks against the owners and operators of the restaurant known as "Country in New York".

2.      Since it opened in 2005, "Country in New York" and its owners and operators have often failed to pay the restaurant's "prep" and line cooks overtime for hours worked in excess of 40 per week, have failed to pay them minimum wages in a timely manner as required by law, and have made unlawful deductions from their paychecks.

3.      Plaintiffs seek to recover:  **(A)** unpaid overtime, liquidated damages and attorney's fees for Defendants' violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and New York Labor Law ("NYLL") article 19 (§ 650, *et seq.* and the regulations promulgated thereunder); **(B)** liquidated damages and attorney's fees under the FLSA for Defendants' failure to discharge their minimum wage payment

obligations in a timely manner, and **(C)** damages and/or restitution for Defendants' unlawful deductions from Plaintiffs' pay in violation of NYLL § 193.

    4.      Plaintiffs seek compensation for the unpaid overtime and untimely paid and unpaid minimum wages under the FLSA and NYLL, liquidated damages under the FLSA, and attorney's fees, costs and interest under the FLSA and NYLL.

## JURISDICTION & VENUE

    5.      This Court possesses subject matter jurisdiction over Plaintiffs' claims alleging violations of the FLSA, 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

    6.      This Court possesses supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' remaining claims.

    7.      The events and omissions giving rise to the claims set forth herein occurred in this judicial district.

    8.      Venue is proper pursuant to, *inter alia*, 28 U.S.C. § 1391.

## THE PARTIES

### THE NAMED PLAINTIFFS

9.      Plaintiffs are individuals presently or formerly employed by Defendants as "prep" and line cooks.

10.     Plaintiff PRINCE BRELAND is a natural person residing at 1350 Clay Ave., Bronx, NY 10456.

11.     Plaintiff ANNIE COLEMAN is a natural person residing at 3-19 West Farms Plaza, Apt. 19D, Bronx, NY 10457.

12.     Plaintiff MAXIME DIATTA is a natural person residing at 691 Linden Blvd., Brooklyn, NY 11203.

13.     The named Plaintiffs' approximate dates of employment as "prep" and line cooks with Defendants were as follows:

(a)     PRINCE BRELAND (from December 2005 through June 2006, and from September 2006 through October 2006);

(b)     ANNIE COLEMAN (from about December 2005 through July 2006); and

(c)     MAXIME DIATTA (from about September 2007 to the present).

14.     As "prep" and line cooks, Plaintiffs' duties consisted of manual work, including, without limitation **(A)** chopping, cutting, mashing,

cooking and stirring food; **(B)** bending down and lifting and moving industrial size pots, pans and trays, which were often filled with foods and liquids cooked or baked to extremely hot temperatures; and **(C)** bending down and lifting and moving industrial size bags and boxes of supplies.

## **DEFENDANTS**

15.    Upon information and belief, GEOFFREY ZAKARIAN, ADAM BLOCK and MOSHA LAX at all times mentioned herein, and 3SIXTY HOSPITALITY, LLC from February or March of 2007 onward, were agents of COUNTRY IN NEW YORK, LLC (as well as THE CARLTON HOTEL ON MADISON AVENUE and/or CARLTON HOTEL MANAGEMENT, LLC, by virtue of the common enterprise and joint employment relationships alleged herein), and in doing the things alleged in this Complaint were acting within the course and scope of such agency.

16.    Upon information and belief, at all times mentioned herein, each Defendant was, in relation to Plaintiffs, an employer or joint employer of Plaintiffs.

17.    Upon information and belief, each of the Defendants has benefited, either directly or indirectly, from the underpayment and untimely payment of Plaintiffs as described in greater detail herein.

**Geoffrey Zakarian**

18.     Upon information and belief, Defendant GEOFFREY ZAKARIAN (hereafter, "ZAKARIAN") is a resident of the State of New York.

19.     Upon information and belief, ZAKARIAN is and was at all times mentioned herein an owner, manager and/or operator of Country In New York, LLC.

20.     Upon information and belief, at all times mentioned herein, ZAKARIAN benefited from, had actual or constructive knowledge of, and directed or condoned the wage and hour violations alleged herein.

**Country In New York, LLC**

21.     Upon information and belief, "Country In New York, LLC," also known as "Country in New York" (hereafter, "COUNTRY") is, and since December 17, 2005 has been, a limited liability company organized under and existing under the laws of the State of New York, with its principal place of business in the State, City and County of New York.

22.     Upon information and belief, between September 2005 and December 17, 2005, "Country in New York" was being operated as an unregistered business entity by its owners (ZAKARIAN and, upon

information and belief, ADAM BLOCK and MOSHA LAX) and its other co-operator(s) (including, upon information and belief, THE CARLTON HOTEL ON MADISON AVENUE).

23.    Upon information and belief, COUNTRY directed, controlled, ratified, participated in, condoned, and/or was a moving force behind the wage and hour violations alleged herein.

**Adam Block**

24.    Upon information and belief, Defendant Adam Block (hereafter, "BLOCK") is and was at all times mentioned herein an owner of COUNTRY.

25.    Upon information and belief, BLOCK is and was at all times mentioned herein a co-manager and/or co-operator of COUNTRY.

26.    Upon information and belief, BLOCK benefited from, had actual or constructive knowledge of, and condoned the wage and hour violations alleged herein.

**Mosha Lax**

27.     Upon information and belief, Defendant Mosha Lax (hereafter, "LAX") is and was at all times mentioned herein an owner of COUNTRY.

28.     Upon information and belief, LAX is and was at all times mentioned herein a co-manager and/or co-operator of COUNTRY.

29.     Upon information and belief, LAX benefited from, had actual or constructive knowledge of, and condoned the wage and hour violations alleged herein.


**The Carlton Hotel on Madison Avenue
& Carlton Hotel Management, LLC**

30.     The Carlton Hotel on Madison Avenue ("CARLTON HOTEL") is a hotel located at 88 Madison Avenue in Manhattan.

31.     Upon information and belief, Carlton Hotel Management, LLC ("CARLTON HOTEL MANAGEMENT, LLC") is a foreign limited liability company operating in New York at 88 Madison Avenue in Manhattan.

32.     Upon information and belief, CARLTON HOTEL MANAGEMENT, LLC has managed or co-managed the CARLTON HOTEL since September 21, 2006.

33.    At all times mentioned herein the CARLTON HOTEL has been part of the same physical structure as COUNTRY.

34.    At all times mentioned herein the provision of food and drink to guests has been integral to the CARLTON HOTEL'S operations.

35.    Upon information and belief, at all material times herein COUNTRY and the CARLTON HOTEL and/or CARLTON HOTEL MANAGEMENT, LLC have had one or more agreements in place whereby Plaintiffs are required by the CARLTON HOTEL and/or COUNTRY to prepare food for the CARLTON HOTEL and its guests, including, without limitation, continental breakfast, room service meals, and banquet meals.

36.    The CARLTON HOTEL (and/or CARLTON HOTEL MANAGEMENT, LLC) maintains, or has caused and/or permitted to be maintained, a website with a web page that features COUNTRY as the CARLTON HOTEL'S purported restaurant.

37.    COUNTRY maintains, or has caused and/or permitted to be maintained, a website with a web page that features the CARLTON HOTEL.

38.    Upon information and belief, the CARLTON HOTEL and/or CARLTON HOTEL MANAGEMENT, LLC benefited from, had

actual or constructive knowledge of, and condoned the wage and hour

violations alleged herein.

39.     Upon information and belief, the CARLTON HOTEL

and/or CARLTON HOTEL MANAGEMENT, LLC are, and at all times

mentioned herein were, among the entities and persons collectively

qualifying as Plaintiffs' "joint employer" under the FLSA and New York

Labor Law.


### 3Sixty Hospitality, LLC

40.     Upon information and belief, Defendant 3SIXTY

HOSPITALITY, LLC is a domestic limited liability company with its

principal place of business at 411 West 14th Street in Manhattan.

41.     In or about February or March of 2007, ZAKARIAN

held a meeting wherein he told COUNTRY employees, in words or

substance, that COUNTRY was in partnership with a company he referred to

as "360" and that "360" would be helping to manage operations.

42.     Upon information and belief, at or about the time

ZAKARIAN made the foregoing announcement, he terminated (or

authorized the termination of) several COUNTRY employees who

performed book-keeping and administrative functions because they would allegedly be no longer needed.

43.    Upon information and belief, ZAKARIAN'S reference to "360" was to a company named "3Sixty Hospitality, LLC" (hereafter, "3SIXTY HOSPITALITY").

44.    Upon information and belief, 3SIXTY HOSPITALITY is a "full service" back of house solutions provider that "replaces" the "in-house bookkeeping, back office management, human resources or inventory team" of hospitality industry employers, including COUNTRY.

45.    Upon information and belief, these back of house services are integrally related to COUNTRY's operations, and include:

(A)    Payroll Administration (separate and apart from the routine payroll processing performed by Paychex and ADP, the companies that have processed COUNTRY'S payroll)

(B)    Variable Labor Cost Analysis

(C)    Assistance in meeting regulatory needs

(D)    Bookkeeping

(E)    Human Resources

(F)    Cost of goods sold management

(G)    Technology design and implementation

46.    Upon information and belief, 3SIXTY HOSPITALITY also provides or purports to provide Fair Labor Standards Act ("FLSA") compliance advice and assistance to hospitality industry employers such as COUNTRY.

47.    Upon information and belief, from early 2007 to date, COUNTRY and 3SIXTY HOSPITALITY have contracted with each other, by written and/or oral agreement, whereby 3SIXTY HOSPITALITY has acted directly or indirectly in the interest of COUNTRY in relation to Plaintiffs.

48.    Upon information and belief, from early 2007 to date, COUNTRY and 3SIXTY HOSPITALITY have generally met at least twice a week during most weeks to discuss management and/or operational issues.

49.    Upon information and belief, from early 2007 to date, 3SIXTY HOSPITALITY has managed or co-managed COUNTRY's banking.

50.    Upon information and belief, from early 2007 to date, COUNTRY has permitted 3SIXTY HOSPITALITY to make or strongly influence decisions concerning when, how often and how much Plaintiffs should be paid.

51.    Upon information and belief, from early 2007 to date, COUNTRY has permitted 3SIXTY HOSPITALITY to make or strongly influence decisions about whether Plaintiffs' right to timely payment for their labor should be subordinated to COUNTRY's interest in paying other creditors.

52.    Upon information and belief, from early 2007 to date, 3SIXTY HOSPITALITY has been among the entities and persons collectively qualifying as a "joint employer" under the FLSA and NYLL of those Plaintiffs who worked on the premises of COUNTRY since that time.

53.    Upon information and belief, from late winter or early spring of 2007 to the present, 3SIXTY HOSPITALITY benefited from, had actual or constructive knowledge of, and directed or condoned the wage and hour violations alleged herein.

## CLASS ACTION ALLEGATIONS

54.    The claims in this Complaint arising out of the NYLL are brought by plaintiff under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class consisting of all persons who have worked as "prep" and line cooks at Country in New York between

September 2005 and the date of final judgment in this matter (the "Rule 23 Class").

55.    The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

56.    Upon information and belief, the size of the Rule 23 class is over 100 persons, although the precise number of such employees is not known by Plaintiffs at this time.  Facts needed to determine the precise size of the Rule 23 class are presently within Defendants' sole control.

57.    Defendants have acted or have failed and/or refused to act on grounds generally applicable to the Rule 23 Class.

58.    Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually, including, *inter alia*:

(a)    whether Defendants violated NYLL article 19 (§§ 650 *et seq.*) and its implementing regulations (12 N.Y.C.R.R. Part 142) and NYLL article 6 (§§ 190, *et seq.*);

(b)    whether Defendants failed to pay Plaintiffs and the Rule 23 Class overtime pay at the rate of 1½ times the regular rate of pay for hours worked in excess of 40 per week;

(c)    whether Defendants periodically failed to pay Plaintiffs and the Rule 23 Class the applicable minimum wage for each of the pay periods worked by Plaintiffs;

(d)    whether Defendants made unlawful deductions from the pay of Plaintiffs and the Rule 23 Class; and

(e)    the nature and extent of the class-wide injury and the measure of damages for those injuries.

59.    The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants as "prep" and line cooks at Country in New York within three years prior to filing.  They enjoy the same statutory rights under the NYLL **(A)** to be paid at the rate of 1½ times the regular rate of pay for all hours worked in excess of 40 per week; **(B)** to be paid and paid in a timely manner at least the minimum wage for all hours worked, and **(C)** to not have unlawful deductions from their paychecks.

60.    Plaintiffs and the Rule 23 Class Members have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns.

61.    Plaintiffs will fairly and adequately represent and protect the interests of members of the Rule 23 Class.

62.     Plaintiffs have retained counsel competent and experienced in wage and hour litigation.

63.     There is no conflict between the Plaintiffs and the Rule 23 Class Members.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this dispute.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' systemic policies, practices and procedures.  Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' time-keeping and compensation practices and to vigorously prosecute a lawsuit against Defendants to recover such damages.  In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that could result in inconsistent judgments about Defendants' practices.

65.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## COLLECTIVE ACTION ALLEGATIONS

66.     The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and similarly situated persons who have worked at Country in New York since its opening in or about September 2005 who elect to opt-in to this action (the "FLSA Collective").

67.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs.  Upon information and belief, there are over 100 similarly situated current and former "prep" and line cooks employed by Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of court-supervised notice of, and opportunity to join, this lawsuit.

68.     Those similarly situated employees are known to Defendants and are readily identifiable and locatable through Defendants' records.

69.     Pursuant to 29 U.S.C. § 216(b) these similarly situated employees should be notified of and allowed to opt into this action.

## CLASS-WIDE ALLEGATIONS

70.     Plaintiffs and the members of the Rule 23 Class and the FLSA Collective (collectively, the "Class Members") have been victims of

Defendants' policies and practices which violate the FLSA and NYLL by, *inter alia*, willfully (A) failing to pay them at the rate of 1½ times the regular rate of pay for all hours worked in excess of 40 per week; (B) failing to pay them and pay them in a timely manner at least the minimum wage for all hours worked, and (C) taking unlawful deductions from their paychecks.

71.    As part of their regular business practice, Defendants have intentionally, willfully and repeatedly harmed Plaintiffs and the Class Members by engaging in a pattern, practice and/or policy of violating the FLSA and NYLL, as set fort in greater detail herein.

## FIRST CAUSE OF ACTION

## UNPAID OVERTIME UNDER THE FLSA

72.    The allegations of paragraphs 1 - 71 of the Complaint are incorporated herein by reference.

73.    Defendants regularly conduct business in the State of New York, and, at all times mentioned herein, had at least two employees engaged in commerce.

74.    At all times mentioned herein, Plaintiffs regularly engaged in interstate commerce in connection with their employment, including, but not limited to:  **(A)** participating in the handling of equipment,

food, spices and condiments transported across state lines; and **(B)**
participating in the rendition of production work for the benefit of out-of-
state patrons and hotel guests.

75.    Upon information and belief, at all times mentioned
herein, Defendants' activities described herein were related and performed
through common control for a common business purpose, and constituted an
enterprise within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203[r]).

76.    At all times mentioned herein, Defendants, as a common
enterprise and joint employer, employed employees at COUNTRY'S
premises in handling, selling, or otherwise working on goods and materials,
including, but not limited to, food, alcoholic and other beverages and a wide
range of supplies which had moved in or been produced for commerce by
other persons.

77.    Upon information and belief, at all times mentioned
herein, the annual dollar volume of business of Defendants collectively
exceeded $500,000.

78.    Upon information and belief, at all times mentioned
herein, the annual dollar volume of business of COUNTRY, 3SIXTY, the
CARLTON HOTEL and CARLTON HOTEL MANAGEMENT LLC each
exceeded $500,000.

79.    Plaintiffs were not administrative or executive employees exempt from the requirements of the FLSA, and were not otherwise exempt.

80.    For the first several months of its operation, COUNTRY hired Plaintiffs to work on a nominal shift basis, with Plaintiffs working as "prep" and line cooks for breakfast, lunch, or dinner shifts, and receiving a particular amount per shift.

81.    The work required for a given shift often exceeded the nominal length of the shift.

82.    During 2006, Defendants began phasing out its policy of shift-based pay and replacing it with a nominal hourly wage which, for most Plaintiffs, was between $8 and $15 per hour.

83.    At all material times herein (*i.e.*, both before and after Defendants' switched to an hourly wage model), Plaintiffs generally worked in excess of 40 hours per week, but were often not compensated for their overtime hours at the rate of 1½ times the regular rate of pay.

84.    Defendants have engaged in various time- and record-keeping manipulations to conceal, diminish or otherwise avoid their lawful obligations to Plaintiffs.  These tactics have included, but are not limited to:

(A)    failing to pay Plaintiffs at the rate of 1½ times the regular rate of pay for hours worked in excess of 40 per week;

(B)    under-reporting the actual number of hours worked;

(C)    issuing paychecks listing inaccurate, frequently changing and artificially low "hourly" pay rates, particularly in pay periods when Plaintiffs worked a substantial amount of overtime;

(D)    delaying recognition of some of the hours worked in given (and usually labor intensive) pay period until the subsequent pay period, thereby reducing the record of Plaintiffs' overtime hours;

(E)    failing to include the value of certain benefits (for example, meals) in Plaintiffs' regular rate of pay; and

(F)    requiring new hires to "trail" (work for a day or part of a day alongside other "prep" and line cooks) at the outset of their employment, and not paying them for their time spent "trailing".

85.    Due to the extent and severity of Defendants' time- and record-keeping manipulations, Plaintiffs cannot determine the full amount that Defendants' owe them without examining Defendants' books and records and conducting discovery.

86.    Upon information and belief, Defendants have custody, possession and/or control of the records concerning the exact number of excess hours Plaintiffs worked.

87.    Plaintiffs propose to obtain such information by appropriate discovery proceedings to be taken promptly, and Plaintiffs will then amend their pleadings herein to set forth the amount due each of them, if such amendment is deemed necessary at that time.

88.    No agreement existed between Plaintiffs and Defendants with respect to the payment of overtime for hours worked in excess of 40 in a workweek.

89.    Upon information and belief, at all times mentioned herein Defendants were aware that overtime pay is mandatory for non-exempt employees who work more than 40 hours per week.

90.    Upon information and belief, Defendants' FLSA violations were willful.

91.    Based upon the foregoing, for violating the FLSA since "Country in New York" opened in 2005, Defendants are liable in an amount to be determined at trial, together with liquidated damages, attorney's fees and costs.

## SECOND CAUSE OF ACTION

## UNPAID OVERTIME UNDER NEW YORK LAW

92.    Plaintiffs incorporate paragraphs 1 - 91 of the Complaint by reference as if fully set forth herein.

93.    Defendants failed to comply with, *inter alia*, NYLL § 663(1), NYLL § 198 and 12 NYCRR § 142-2.2, in that Plaintiffs often worked for Defendants in excess of the maximum hours provided by State and federal law, but provision was not made by Defendants to pay those Plaintiffs at the rate of 1½ times the regular rate for the hours worked in excess of the hours provided for by State and federal law.

94.    Based upon the foregoing, Defendants, for violating Labor Law § 663(1) and 12 NYCRR § 142-2.2 are liable in an amount to be determined at trial, plus statutory attorney's fees and costs.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF THE FLSA'S
## PROMPT PAYMENT REQUIREMENT

95.    Plaintiffs incorporate paragraphs 1 - 94 of the Complaint by reference as if fully set forth herein.

96.    The FLSA provides that "[e]very employer shall pay to each of his employees . . . who in any workweek is engaged in commerce or

23

in the production of goods for commerce . . . not less than the minimum wage." 29 U.S.C. § 206(b).

97.    The FLSA requires the employer to pay on time, and what constitutes timely payment must be measured by objective standards that are not set forth within the text of the FLSA.

98.    The objective standard governing the timing of the payment of Plaintiffs' wages is set forth in New York Labor Law § 191, which specifies that manual workers (such as Plaintiffs) are required to be paid their wages no less frequently than once a week.

99.    However, from the date COUNTRY opened Plaintiffs' wages have been paid no less frequently than once every two weeks.

100.    By definition, an illegal and unilaterally imposed payment schedule is illegitimate and cannot be deemed to be the result of bona fide contractual negotiations or a bona fide agreement.

101.    Upon information and belief, Defendants delayed the payment of Plaintiffs' wages to make use of and/or earn interest on the unpaid pages, and to obscure their unpaid overtime obligations to Plaintiffs by lumping together two weekly pay periods into a single check containing no breakdown of the overtime hours worked in a given week.

102.   Defendants' 14-day payment schedule for manual workers was unlawful, and therefore violated the FLSA's prompt payment requirement.

103.   From April 2007 onward, COUNTRY began paying Plaintiffs even less frequently by adopting a purported practice of paying Plaintiffs twice a month – *i.e.*, generally once every 15 or 16 days.

104.   Defendants' purported practice of paying Plaintiffs every 15 or 16 days violates the FLSA timely payment requirement, and is also wholly inappropriate for non-exempt employees whose lawful entitlement to overtime is based on a seven (7) day work week.

105.   In addition, Defendants often failed to even adhere to their own unlawful and unilaterally-imposed 15 or 16-day purported pay schedule by:  **(A)** disregarding their purported 15 or 15 day payment schedule; **(B)** withholding Plaintiffs' paychecks on the purported "pay day" until after the banks were closed so Plaintiffs could not deposit them until the next business day; and **(C)** issuing bad checks which had to be reissued after being dishonored for insufficient funds.

106.   As a result of the foregoing, Defendants, for violating the FLSA's prompt payment requirements from September or October of 2005 onward, are liable to Plaintiffs for liquidated damages equal to the minimum

wage payments that were not timely paid, together with attorney's fees,

interest and costs.

## FOURTH CAUSE OF ACTION

## VIOLATIONS OF NYLL § 193

107.   Plaintiffs incorporate paragraphs 1 – 106 of the

Complaint by reference as if fully set forth herein.

108.   NYLL § 193 prohibits employers from making

deductions from the wages of their employees, with certain exceptions not

relevant here.

109.   Upon information and belief, Defendants violated NYLL

§ 193 by making actual unlawful deductions from Plaintiffs' pay for, *inter

alia*, leftover scraps of meat and other foodstuffs, few if any of which could

have qualified as a bona fide "meal" under applicable regulations.

110.   Upon information and belief, Defendants also violated

NYLL § 193 by manipulating the record of Plaintiffs' hours worked to avoid

paying Plaintiffs for all of their hours worked.

111.   Upon information and belief, Defendants also violated

NYLL § 193 by making deductions for, *inter alia*, purported tax

contributions that were not transmitted in full to the relevant taxing authorities.

112.   Defendants are liable for damages equal to the amounts unlawfully deducted from Plaintiffs' pay, with interest.

113.   In addition, as "employees" (NYLL § 190[2]) whose "earnings" or "wages" (NYLL § 190[1]) were unlawfully withheld by their "employers" (Labor Law § 190[3]), Plaintiffs are entitled to an award of reasonable attorney's fees under Labor Law § 198 for Defendants' violations of NYLL § 193.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective and the Rule 23 Class, respectfully request a judgment:

(A)    Authorizing the issuance of notice informing each person who worked at COUNTRY as a "prep" or line cook at any time since September 2005 of the nature of this action and of their right to opt into it;

(B)    Certifying this case as a class action under Fed. R. Civ. P. Rule 23;

(C)    Awarding Plaintiffs, the FLSA Collective and the Rule 23 Class damages for unpaid overtime and unlawful deductions from their pay;

(D)    Awarding liquidated damages to Plaintiffs and the FLSA Collective pursuant to 29 U.S.C. §§ 216 and 260.  (Plaintiffs do not seek liquidated damages in connection with their NYLL claim.); and

(E)    Awarding Plaintiffs, the FLSA Collective and the Rule 23 Class reasonable attorney's fees and costs under the FLSA and NYLL.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. Rule 38, Plaintiffs demand a trial by jury.

Dated:    New York, New York
July 2, 2008

LAW OFFICES OF SCOTT A. LUCAS
By_____/s/_____
    Scott A. Lucas (SL-6316)
    Steven M. Sack, Of Counsel (SS-4479)
    The Lincoln Building – Suite 1001
    60 East 42nd Street
    New York, NY 10165
    (212) 573-6906
    *Attorneys for Plaintiffs*